BOYD ET AL. *v.* ALABAMA & V. RY. Co.

[71 South. 164.]

1. CARRIERS. *Personal injury.   Management of train.   Passengers.   Falling from train.*

Where the defendant railway company did not contract to carry a lunatic unaccompanied by a caretaker, and there was no evidence that the employees of the road anticipated any effort on the part of the lunatic to jump from the moving train, the fact that a window was left open near the lunatic from which he jumped while his caretaker was sitting in front of him with his back turned, did not show negligence on the part of the defendant.

2. Carriers. *Passengers. Management of train. Duty as to passengers falling from train.*

> In such case where the railway company did not know or have good reason to know that the lunatic was in fact seriously hurt or injured and could not have safely backed down to the place where he fell, but permitted the caretaker of the lunatic to leave the train to go back to his assistance, and in fact could not have prevented the death of the lunatic or have relieved his suffering by going back and taking him up, it was under no duty to back its train and take up such injured passenger.

Appeal from the circuit court of Newton county.

Hon. C. L. Dobbs, Judge.

Suit by Pearl Boyd and others against the Alabama & Vicksburg Railway Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*F. V. Brahan* and *Byrd & Byrd,* for appellants.

*R. H. & J. H. Thompson,* for appellee.

Stevens, J., delivered the opinion of the court.

Appellants, the widow and children of H. V. Boyd, deceased, as plaintiffs in the court below, sued the Alabama & Vicksburg Railroad Company, appellee, for the death of H. V. Boyd, a passenger on said railway. The deceased took passage on said road as a passenger from Meridian to Jackson in February, 1913, and after proceeding on his journey for some distance, and before the train reached the town of Newton, Mr. Boyd either jumped from or fell through an open window of the passenger coach and received injuries from which he subsequently died. It appears that, several years before, deceased suffered from an attack of lunacy and became, and was for some time, a patient in the Mississippi Insane Asylum at Jackson. After he was discharged from the institution, he returned to his home in Noxubee county, married, and became the father of the

four minor children, who, with the widow, instituted this suit. A short time before the injury complained of, Mr. Boyd suffered spells of melancholy, and seemed to be conscious of a return of his lunacy, and voluntarily consented to return to the insane asylum in company with his brother-in-law, a Mr. McCallom. These two were making the journey on one of the regular passenger trains of appellee and for a time occupied the same seat. McCallom, because the window sash was up and the wind too cold, left the seat occupied by Boyd and took the seat next in front with his back turned toward Boyd. A short while thereafter some one of the passengers exclaimed, either that a man had fallen from the window, or had jumped out of the window, when McCallom, turning, looked out of the window and saw Mr. Boyd just as he struck the ground. McCallom thereupon pulled the bell cord and caused the train to stop about a quarter of a mile from the place where his companion had fallen, and demanded of the conductor that the train should be backed to the place where Boyd left the train. The conductor declined to comply with this request or to back the train, but did permit Mr. McCallom to get off the train and go back in search of his charge. Mr. McCallom walked back and found Boyd by the side of the railroad track in a semiunconscious condition and suffering from injuries which subsequently proved fatal. There were residents near by who furnished a wagon and assisted McCallom in promptly removing Mr. Boyd to a sanatorium at Newton, where he died the next day.

There is some complaint in the declaration against the railroad company for permitting the window, through which Boyd either jumped or fell, to remain open and not fastened. But the main ground relied upon for recovery is the contention that the railroad company was under a duty to back the train to the point where deceased fell off and to remove the injured passenger to Newton, or to some other point for prompt surgical treatment. At the conclusion of the plaintiffs' testimony, the court

sustained the motion of appellee to exclude all the evidence on behalf of the plaintiffs and to grant the defendant a peremptory instruction. In pursuance of this motion, final judgment was entered in favor of the railroad company.

On the facts of this case, no negligence can be imputed to the railroad company for permitting the window sash to be open, or for allowing Mr. Boyd to escape from the coach. The railroad company did not contract to convey a lunatic unaccompanied by a caretaker, and there is no evidence even that the employees of the road anticipated any effort on the part of Mr. Boyd to jump from the moving train. It is manifest that Boyd either jumped through the window, or so protruded his body as practically and effectually to throw himself from the moving train. The contract of carriage was in no wise broken, and indeed counsel for appellants do not here contend that the railroad company was negligent, so far as we are concerned with the fall of Mr. Boyd from the moving train.

It is contended, however, that the railroad company was under a duty to back its train and pick up the fallen and injured passenger. On the facts of this case, we cannot say that such a duty existed. In the first place, it assumed that the railroad company knew, or had good cause to know, that the man was in fact seriously hurt or injured. As a matter of fact, the railroad company did not know that the necessity existed. In the next place, there is no evidence that the train could have safely been backed without a collision with other trains, or without materially inconveniencing many passengers and causing them to miss regular connections with other railroads. Then the evidence does show that Mr. McCallom, the brother-in-law of the deceased and the one standing as sponsor and serving as caretaker for Mr. Boyd, was permitted to leave the train for the purpose of rendering any needed assistance, and that he did promptly, by the help of neighbors, remove the injured man to a

creditable and nearby sanatorium, where physicians administered such relief as they could afford, and the evidence therefore utterly fails to show that the employees could have prevented the death of the passenger by going back and picking him up, or even that they could have in any wise more effectually relieved his suffering. The gravamen of this suit is a claim of twenty-five thousand dollars for the death of H. V. Boyd caused by the failure of the railroad company to perform its duty toward him as a passenger. The evidence fails to show that his death could have been avoided by any assistance which the employees could possibly have rendered in addition to those that actually were rendered by his faithful companion and good Samaritan neighbors. This case is different from that of *Railroad Co.* v. *Byrd,* 89 Miss. 308, 42 So. 286, and authorities there relied on. We have examined all the cases cited by counsel and find no adjudicated case which, in our judgment, conflicts with the decision we are announcing.

*Affirmed.*